IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK PIERRI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 9037 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| MEDLINE INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frank Pierri has brought a two count amended complaint against his former employer, defendant Medline Industries, Inc., alleging that defendant first discriminated against him for his association with a person with a disability in violations of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4) (Count I), and then retaliated against him for complaining (Count II). Defendant has moved for summary judgment on both counts. For the reasons described below, defendant's motion is granted.

**BACKGROUND**[1]

Plaintiff began working for defendant in 2011 as an Associate Chemist. After 90 days he was promoted to Chemist and then in December 2014 he was promoted to Chemist II. In that role he handled Research & Development ("R&D") work and oversaw quality control ("QC") work. He reported to lab manager Rich Tyler.

In mid-2015 plaintiff asked Tyler if he could work a modified schedule so he could help care for his grandfather who had liver cancer. Tyler allowed plaintiff to work four 10-hour days

---

[1] The background facts are taken from the parties' L.R. 56.1 Statements.

instead of five 8-hour days, giving plaintiff one weekday off as he had requested. Plaintiff worked that schedule for approximately six months.

Sometime in November or December 2015, Tyler told plaintiff that he would need to move back to a five day, 8-hour schedule, claiming that plaintiff's work performance had suffered. Defendant offered to allow plaintiff to work an alternative five day schedule from Tuesday through Saturday, giving plaintiff Monday off to help care for his grandfather. Plaintiff declined that offer because he wanted to attend school on Saturdays.

Plaintiff then went to the Human Resources Department ("HR") and was told that he could take Family and Medical Leave Act ("FMLA") leave to care for his grandfather. He was approved to take 1 day of leave each week.

Plaintiff claims that after he began taking FMLA leave one day a week, Tyler, with whom he had a friendly relationship, began to harass him. He cites a number of incidents such as Tyler yelling at him in front of co-workers, threatening to go "over his head" for not doing projects assigned at the end of the day, demanding to know where plaintiff was when he had gone to the wash room, demanding that plaintiff let Tyler know when plaintiff was going to lunch, subjecting plaintiff to unwarranted criticisms about his work, demanding that plaintiff fill out a "special worksheet" and refusing to assign him R&D work which was the main basis for plaintiff's bonus, and finally threatening to move plaintiff's desk in front of Tyler's desk. Plaintiff claims that after he reported Tyler's behavior to HR, it became worse, forcing plaintiff to take FMLA leave for anxiety and stress.

Plaintiff last worked on March 26, 2016. He was approved for FMLA leave on March 30, 2016, and stayed on that leave through the end of September 2016. He was then approved

for short-term and then long-term disability leave. He made no effort to return to work. On March 28, 2017, defendant contacted plaintiff's attorney to find out if plaintiff was planning on returning to work, indicating that it would terminate plaintiff if they did not hear back from him before the end of the week. Two weeks later, after not hearing from plaintiff, and over a year since plaintiff last worked, defendant terminated him for failure to return to work.

## DISCUSSION

Plaintiff has moved for summary judgment on both counts. Summary judgment is appropriate when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A moving party can prevail on summary judgment by either pointing to undisputed facts supported by the record that demonstrate that it is entitled to judgment, or it can point to an absence of evidence of an essential element of the responding party's claim or affirmative defense. Id. Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tennenbaum-Hill Assocs., Inc., 914 F.2d 107, 110 (1990). The court considers the evidence as a whole and draws all inferences in the light most favorable to the nonmoving party. Green v. Carlson, 826 F.2d 647, 651 (1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (186). The nonmoving party, must, however, do more than simply "show there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in

3

support of the [nonmoving party's] position will be insufficient, there must be some evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

In Count I, plaintiff alleges that defendant (specifically Tyler) discriminated against him because of his association with his grandfather. The ADA, 42 U.S.C. § 12112(b)(4), prohibits an employer from discriminating against an employee "because of the known disability of an individual with whom [the employee] is known to have a relationship or association." As the Seventh Circuit has noted, associational discrimination claims are unlike other ADA claims "because employers are not required to provide reasonable accommodations to non-disabled workers." Magnus v. St. Mark United Methodist Church, 688 F.3d 331, 336 (7th Cir. 2012). "Thus, an employee who cannot meet the attendance requirements of [his] job is not protected by § 12112(b)(4)." Id.

The Seventh Circuit has identified three types of situations within the scope of the associational discrimination provision, all indicative of an employer's bias or prejudice against the needs of a person with a disability, which leads to punishment against a non-disabled employee with a close association to the person with a disability. Larimer v. IBM Corp., 370 F.3d 698, 700 (7th Cir. 2004). The court identified the categories as: (1) expense, because the person with the disability is covered by the company's health plan; (2) "disability by association," such as where an employee's companion is ill and the employer fears the employee may have also become ill, or such as when an employee's blood relative has a genetic ailment and the employee is likely to develop the ailment as well; and (3) distraction, such as when the employee is somewhat distracted at work because a relative has a disability that requires the employee's attention, but not so inattentive that the employee needs an accommodation or

special consideration since the right to an accommodation is limited to employees with a disability. Id.

Thus, to avoid summary judgment, plaintiff must point to evidence that: (1) he was qualified for his job; (2) he was subjected to an adverse employment action; (3) he was known to have a relative or associate with a disability; and (4) his case falls within one of the three categories of expense, association, or distraction. Magnus, 688 F.3d at 336-37. There must also be some evidence of causation, such as a showing that "it is more likely than not that the employer took the adverse action because" of the disability of the person with whom the employee is associated. Id. at 337.

In the instant case, plaintiff's claims do not fall into any of the categories of associational discrimination, and he has not argued that they do. Because there is some evidence, however, that Tyler thought (or claimed) that plaintiff's work suffered when he was on a four day 10-hour schedule, the court will assume his claim falls within the distraction category. The court notes, however, that there is no evidence that plaintiff was distracted at work.

In any event, plaintiff has not and cannot establish that he suffered an adverse employment action. Indeed, it appears that defendant went out of its way to accommodate plaintiff, even when it was not required to do so. Nevertheless, plaintiff claims that he suffered abuse from Tyler. Most of the alleged abuse is de minimis, however, not affecting plaintiff in any material way. "An adverse employment action is one that is materially adverse, meaning more than an inconvenience or an alteration of job responsibilities." Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002). "Unfair reprimands or performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment

5

actions." Jones v. Res-Care, Inc., 613 F.3d 665, 671 (7th Cir. 2010). Consequently, plaintiff's claims that Tyler gave him unfair reviews (average versus above average) or made "false statements" about his performance, not tied to any tangible job consequence, are insufficient to establish an adverse action. Nor are Tyler's criticisms of plaintiff or his admittedly unexecuted threats to require plaintiff to fill out worksheets or move his desk.

The closest plaintiff can come to establishing an adverse action is his claim that Tyler gave him less R&D work, which adversely affected a potential bonus. But he admits that he received his bonus for the first quarter of 2016 and admits that had he worked he would have had the opportunity to earn the maximum bonus for the remaining quarters. He elected to stop working completely, and thus could not earn a bonus no matter what Tyler had done. Moreover, the denial of a bonus does not constitute an adverse employment action where (as here) the employee is not automatically entitled to the bonus. See e.g., Maclin v. SBC Ameritech, 520 F.3d 781, 788 (7th Cir. 2008).

In short, none of the litany of harassing actions to which plaintiff claims he was subjected altered the conditions of his employment in any meaningful way. What did alter the condition of his employment was his decision not to return to work. Consequently, the court grants defendant's motion for summary judgment on Count I.

In Count II, plaintiff claims that defendant (again specifically Tyler) retaliated against him after he complained to HR. To establish this claim, he must show evidence that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal link between the two. Brown v. Advocate S. Suburban Hosp., 700 F.3d 1101, 1106 (7th Cir. 2012).

Count II fails for the same reasons as Count I. Plaintiff has not presented any evidence that he suffered a materially adverse employment action. In this count he tries to argue that his termination was in retaliation for his complaints. But, as defendant points out, his EEOC charge contained no such claim (because his charge was brought before his termination), he did not try to amend his EEOC charge, or file a new charge. Most importantly, there is no such claim in his amended complaint, and he did not seek to add such a claim even after defendant pointed out the deficiency.

In any event, there is no evidence to support the claim. He admits that he made no attempt to return to work. He refused to respond when defendant asked about his intention, despite being told that a failure to respond would result in termination. All of his leave had expired, yet he still refused to return to work. Thus, the undisputed evidence demonstrates that plaintiff was terminated for failing to return to work rather than because he had complained about Tyler over a year earlier. Consequently, the court grants defendant's motion for summary judgment on Count II.

## CONCLUSION

For the reasons described above, defendant's motion for summary judgment (Doc. 64) is granted.

**ENTER:** **August 21, 2019**

_____
**Robert W. Gettleman**
**United States District Judge**